GAMBLE v. O'NEILL

(May 5, 1930. Opinion and Decree.)

Gamble & Gamble, of New Orleans, attorneys for plaintiff, appellee.

St. Clair Adams, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J.  On May 18, 1928, Harry P. Gamble, plaintiff herein, resigned the office of attorney for the clerk of the Civil District Court for the Parish of Orleans, in the collection of inheritance taxes, an office to which he had been appointed and the functions of which he had discharged for some years prior thereto. He mailed his resignation to Governor Simpson, whose term of office was about to expire, with a request that it be handed to his successor, Governor Long, in the event that the resignation was not acted upon during his incumbency of the gubernatorial office.  On May 22, 1928, Governor Long notified Mr. Gamble that his resignation had been accepted, but his successor, Earl K. Long, was not appointed until May 28, 1928, when he was confirmed by the Senate and inducted into office. During the interval between May 18th and May 28th, plaintiff continued to act and to discharge the functions of the office which he had resigned, having been advised, in response to an inquiry addressed to the Attorney General, that it was his duty so to do.

The office which Mr. Gamble occupied, was established by Act 127 of 1921 and provided for compensation upon a fee basis.  Section 22 of that act reads in part as follows:

"* * * The said attorneys both in the Parish of Orleans, and other parishes of the state, shall receive for their services, except as provided in Section 12 and 13, a fee of four per cent on all taxes collected hereunder up to one hundred and fifty thousand dollars ($150,000) and two per cent on amounts in excess thereof."

A controversy arose between Mr. Gamble and his successor concerning certain

fees which had accrued, with the result that this suit was brought by Harry P. Gamble against John J. O'Neill, clerk of the Civil District Court, who, under the act referred to, was charged with the collection of the taxes and the payment of the fees due the attorney, and E. K. Long, Gamble's successor, for the purpose of establishing which of the two officials was entitled to a sum of money in the hands of the clerk aggregating $1,052.27, which represented fees which had accumulated during the interval between the resignation of Mr. Gamble and the qualification of Mr. Long, his successor.

On behalf of plaintiff, it is urged that, according to the provisions of section 6 of article 19 of the Constitution of 1921, it was his duty to remain in office and to discharge its functions until his successor had been inducted into office, and that, being required to do so by constitutional mandate, it follows necessarily that he is entitled to the emoluments of the office during his incumbency. The section referred to reads as follows:

"All officers, State, municipal and parochial, except in case of impeachment or suspension, shall continue to discharge the duties of their offices until their successors shall have been inducted into office."

Defendants contend "that the emoluments of an office follow the title thereto and, a de facto officer is not entitled to such emoluments," and "that under the inheritance tax law, Act 127 of 1921, Section 22, the attorney who occupies the office of attorney for the inheritance tax collector de jure at the time the inheritance taxes are 'collected,' is entitled to the emoluments of the office." This latter contention having reference to the fact that some of the fees claimed in this suit were not paid until after the qualification of Earl K. Long, though the legal service for which such fees were compensatory had been rendered prior thereto.

We cannot follow counsel in his distinction between a de facto and a de jure officer as affecting the right of plaintiff to recover in this case. At the time the services were rendered for which compensation is claimed, there was only one officer whose duty it was to represent the state in connection with the collection of inheritance taxes. Gamble was the de jure officer. Under the article of the Constitution which has been quoted, it was his duty to discharge the functions of that office, and no one else had any authority whatever to do so. Being compelled to render services, there is necessarily implied the right to collect the compensation provided by law for such services; consequently, as to all fees which were collected prior to the qualification of his successor, it seems clear to us that Gamble is entitled to receive them.

Concerning the fees which were paid after the qualification of plaintiff's successor for services rendered prior thereto, which amount to $830, making up more than half the amount sued for, we find ourselves in complete accord with the views expressed by the trial court in its able opinion, from which we quote:

"It is argued that, because the Act measures the amount of compensation to be paid by the amount collected, it was thereby intended to give the amount to the person filling the office at the time the collection was had. This argument, however, entirely overlooks the fact that the same section states specifically that the amount is received for the services, which can mean only for the services provided for by the Act.

"When it is considered that the Act provides a specific means whereby the court fixes by judgment the amount due, and gives the heir the right to have this done, and also provides that the tax itself shall

not be payable or delinquent until six months after the death of the de cujus, it would appear reasonably clear that the services rendered intended by the Act were those rendered up to the time the tax was fixed, as the collection follows almost invariably as a matter of course, the executors and heirs being prohibited by the terms of the Act from going into possession or delivering legacies without the payment of the tax.

"It is urged, however, that inasmuch as the approval of Mr. Long was had before the Clerk of Court accepted the payment of the taxes,· that he has also rendered services, and the statute provides no method of segregating the services rendered by each. The answer thereto is that his approval was not at all necessary, and, if exacted by the Clerk, was done so purely for his own personal satisfaction. The judgment of the Court fixing the amount of tax due was a complete warrant to the Clerk to accept the tax, and nothing further was needed.

"The matter is not completely a new one in our jurisprudence, as the Supreme Court in the case of Hiestand v. Labatt, 11 La. Ann. page 30, in passing upon a very similar statute, said: ·

" 'Syllabus: The five per cent allowed by statute to the Assistant City Attorney on the amount of all fines and penalties collected, in full compensation for his services, has reference to his services anterior to the collection, and to the general understanding of the profession that an attorney has earned his fee when he has prosecuted or defended a case to judgment; so that the Assistant City Attorney who obtains the judgment is entitled to the commission, although the actual collection of the debt may be made by his successor.

" 'Opinion. Lea, J. The question for the consideration of the court in this case is whether the former Assistant· City Attorney of the City of New Orleans is entitled to recover the five per cent commissions on tax bills, fines and penalties which remained uncollected at the time he went out of office. This question is not free from difficulty, but we think the statute which provides that a commission of five per cent on the amount of all fines and penalties· collected, shall be allowed the Assistant City Attorney

in full compensation for his services, has .reference to his services anterior to the collection and to the general understanding of the profession that an attorney has earned his fee when he has prosecuted or defended a case to judgment. This view of the case is presented with the greater force, when it is considered that the judgment itself includes the attorney's commissions which the statute says shall be received by the said Assistant Attorney. It was not, we think, in the contemplation of the legislator, that a judgment should be rendered for a remuneration of services not yet performed by a person not yet in office, when the officer who himself obtains the judgment is to go unpaid.'

"In Morel v. City of New Orleans, 12 La. Ann. page 485, the Court said:

" 'An attorney at law is entitled to claim commissions upon judgments obtained through his agency, as well as upon moneys actually collected on executions and accounted for to his clients, although he be superseded by the appointment of another attorney.'

"In Hiestand v. New Orleans, 14 La. Ann. page 137, the Court said:

" 'Our attention is called to the case of Hiestand v. Labatt, 11 La. Ann. 30, and the correctness of that decision is questioned. It was there admitted that the question decided in that case was not free from difficulty. But after due reflection, we are not satisfied that any principle more satisfactory can be adopted than the one upon which the decision is based.

" 'It is urged against that decision that it declares that the fee of the City Attorney is earned by the rendition of the judgment, and that his successor will not receive anything for collecting these judgments, and, therefore, will be negligent, because without interest, in their collection. He will have the same interest in the fees in the hands of his successor, and it will be in the power of the city, if sued for the fees of the Assistant City Attorney, to defend the suit on the ground that he had been negligent in the discharge of his duties, if such be the fact.'

"See also Bright v. Hewes, 18 La. Ann. page 666, the syllabus of which reads as follows:

" 'Where the City attorney of New Or-

leans obtained judgment against delinquent tax payers for taxes, and before the judgments were paid and satisfied was removed from office, and his successor claimed for the City the percentage allowed the City Attorney for the collection of taxes:

" 'Held, that the City Attorney who obtained the judgments is entitled to the five per cent on the amount collected on said judgments, and his successor in office has no authority to interfere and enjoin the sheriff from paying the percentage to the attorney who obtained the judgments.' "

For the reasons assigned, the judgment appealed from is affirmed.

HIGGINS, J., takes no part.