### STATE ex rel. BOLIN v. WEBSTER PARISH SCHOOL BOARD et al.*

### No. 4700.

Court of Appeal of Louisiana. Second Circuit.

Nov. 3, 1933.

E. L. Richardson, of Minden, for appellant.

Craig, Bolin, Magee & Baucum, of Shreveport, and R. F. Langston, of Minden, for appellee.

MILLS, Judge.

E. H. Bolin alleges that he is the duly elected and qualified member of the Webster parish school board for ward 4, having been elected at the general election held November 8, 1932, and commissioned December 9, 1932. That at the first call meeting of said board after his election, he was recognized as the holder of said office by the entire membership of the board.

He complains that Dr. W. G. Banks is claiming the office and that the school board has since illegally recognized Banks as the legal holder of same. That Banks is relying upon a pretended commission issued to him by the Governor, which is null and void for the reason that no vacancy existed. That Banks is in bad faith in his contention, and is an intruder and usurper in said office. That the school board is in bad faith in recognizing Banks and refusing to recognize petitioner. That by said action he has been deprived of emoluments greater than $100 and less than $2,000, which emoluments he does not seek to recover in this suit but reserves the right to sue for same. He prays for judg-

*Rehearing denied December 1, 1933.

ment against defendants Banks and the school board, decreeing Banks not to be a member of the board, and recognizing him as the legal holder of said office and entitled to exercise the functions and to collect the fees and emoluments thereof.

He further prays that an injunction issue restraining Banks and the school board from interfering with his occupation of said office, and any further judgment that he may be entitled to under the pleadings and evidence.

Both the school board and Banks excepted that the petition disclosed no cause or right of action. This motion was sustained as to the school board, but overruled as to Banks. As relator does not appeal or answer the appeal in this case, the school board, because of the sustaining of this exception, is definitely and completely out of the case, which continued as to Banks alone.

After answering, but before trial, defendant Banks, on June 5, 1933, filed a motion to dismiss the suit, in which he renounced and relinquished all claim to the office, alleged that he had abandoned same, and that he had resigned as a member of the board, which resignation had been accepted by the Governor on June 1, 1933, as shown by letter from the Governor attached to the motion; that since his resignation he had attended no meetings of the board and had acted in no way as a member of said board, and did not intend in the future to so act. At the same time and as a part of his motion, he deposited in the registry of the court sufficient funds to pay all costs of court up to that time.

The Governor's letter, dated June 1, 1933, accepting the resignation, reads:

"This is to acknowledge receipt of your resignation as member of the Webster Parish School Board, Ward 4, effective this date, and I hereby accept the same."

■ There is no question that respondent had a right to resign, as in section 17 of Act No. 100 of 1922, creating parish school boards, there appears:

"All vacancies in the membership of parish school boards caused by death, resignation, or otherwise, shall be filled by appointment by the Governor."

■ Nor is it questioned that the resignation was legally and properly accepted. A resignation made and accepted, even though respondent may, under the law, have been authorized to continue to administer the office, terminated and settled respondent's claim to the title of the office. Such a resignation after acceptance is final and could not be withdrawn. Rockingham County v. Luten Bridge Co. (C. C. A.) 35 F.(2d) 301, 66 A. L. R. 735.

Respondent contends in his motion to dismiss that as said abandonment and resignation, duly accepted, terminated all controversial issues between him and relator, only a moot question remained. This motion was denied by the trial judge for reasons given in an able and thorough written opinion. The principal reason is: That the Constitution requires all officers, except in cases of impeachment or suspension, to continue to discharge their duties until their successors have been inducted into office, and that until Banks' successor was appointed and inducted into office, it was the duty of Banks to continue to exercise the functions and duties of the office. In support of this he cites section 6 of article 19 of the Constitution of 1921, which provides:

"All officers, State, municipal and parochial, except in case of impeachment or suspension, shall continue to discharge the duties of their offices until their successors shall have been inducted into office."

In the case of Gamble v. O'Neill, 13 La. App. 371, 128 So. 66, 67, it is held that where an officer rendered service after his resignation and the acceptance thereof, " * * * it was his duty to discharge the functions of that office, and no one else had any authority whatever to do so. Being compelled to render services, there is necessarily implied the right to collect the compensation provided by law for such services; consequently, as to all fees which were collected prior to the qualification of his successor, it seems clear to us that Gamble is entitled to receive them."

We also find in 19 A. L. R. page 48, in a copious note, on the rights of officers to resign, to the case of State ex rel. Westfall v. Blair, 87 W. Va. 564, 105 S. E. 830, reported on page 35 of said volume 19:

"It is generally held that a public officer can be compelled to perform the duties of his office notwithstanding he has resigned where it is provided by statute that he shall hold office until his successor is elected and qualified."

The note goes on and gives very excellent reasons for this rule.

■ It therefore appears that the trial judge was correct in holding that, despite his resignation and its acceptance, it was not only the duty of Banks, if legally holding the office, to continue to exercise the functions thereof, but that in the proper case he could even be compelled by mandamus to do so. But, as we understand it, after respondent's resignation and its acceptance, he ceased to be a claimant of the office; that from that time on any exercise of its functions by him was for administrative purposes only and in the interest of public welfare.

The Intrusion into Office Act, No. 102 of 1928, amending and re-enacting sections 2593, 2594, and 2597 of the Revised Statutes of Louisiana, under which this proceeding is brought, provides:

"First—When any person shall usurp, intrude into or unlawfully hold or exercise or attempt to remain in possession of any public office or franchise within this State."

■ After his resignation, its acceptance, and his relinquishment and abandonment of all claim to the office, respondent certainly was not and could not be held to be a usurper or intruder in said office. He could not be held, under such circumstances, to be unlawfully holding or exercising or attempting to remain in possession of said office when he was compelled by the law and against his will to continue to exercise its functions.

We, therefore, do not see how respondent can be compelled to litigate in a case in which he has no interest. The anomalous position of relator in seeking to compel the continuance of the case is shown by his action in the trial on the merits in objecting to any testimony on the part of defendant, for the reason that he was without interest, and after the appeal was lodged in this court, filing a motion to dismiss the appeal on the ground that respondent was without interest or right to prosecute same. In other words, relator seeks to compel respondent to assume a position where he is subject to attack, where he may become liable for costs, and where his right to a sum of money in the shape of the emoluments may be involved, and at the same time insists that respondent is utterly helpless to defend himself.

There is no evidence in the record suggesting that respondent, by his resignation, was trifling with the court and seeking to evade an issue. On the contrary, his motion to dismiss was apparently filed in good faith and designed to terminate the issue.

In 51 Corpus Juris, 331, under the head of "Quo Warranto," we find:

"A quo warranto action or proceeding commenced during the term of office in question may, after the expiration thereof, be tried and prosecuted to final judgment for the recovery of damages or costs which plaintiff has sustained or incurred by the wrongful assumption of authority. However, after the expiration of the term of office, the suit or proceeding may be dismissed, and where no substantial benefit would enure to plaintiff it will not be continued merely to try the abstract title to the office."

■ So, in this case there is no prayer for damages or a refund of emoluments; the costs up to the time of the motion to dismiss were tendered and deposited in court. The only public body concerned, the school board, had been removed from the case. Nothing remained but the abstract question of title between E. H. Bolin, who claimed the office, and W. G. Banks, who most positively asserted he did not. As only the parties would be concluded by any judgment rendered, the question presented is wholly moot.

After the overruling of the motion to dismiss, the case went to trial, in which it was shown that after the election and commission of Bolin, an objection was lodged with the Governor that at the time of his election relator did not have an assessment of not less than $500, as required by the School Board Act. The facts developed were that at the time that relator signified his intention of running, and at the time of the primary, he had no such assessment, but that just prior to the general election he filed with the assessor a rendition disclosing personal property in the amount required. The Governor, upon receipt of the objection, laid these facts before the Attorney General, who rendered an opinion that the rendition did not constitute an assessment, and that relator, not being qualified as required, was not legally elected and that the office was vacant, and that the Governor had the power to make an appointment to fill this vacancy. Acting upon this authority, the Governor appointed Banks to the office. Therefore, upon the merits, the case hinged upon the question as to whether or not the rendition constituted an assessment. The district judge held that it did and decided the case in favor of relator, and it is from this judgment that respondent has appealed.

Finding as we do that the motion to dismiss should have been sustained, we are not called upon to pass upon the merits of the case.

■ In regard to the motion to dismiss the appeal, we cannot agree with relator that respondent was without interest to prosecute an appeal. He was interested at least to the extent of the costs accruing subsequent to his filing of his motion to dismiss, and he was interested in seeing that no judgment was rendered on a moot question which might conclude his rights to any emoluments received by him while serving under the appointment. The motion to dismiss the appeal is, therefore, overruled.

For the reasons above assigned, the judgment of the lower court is reversed, and the motion to dismiss, filed by respondent before going to trial on the merits, is sustained; and judgment is now rendered sustaining said motion and dismissing the suit; respondent to pay the costs up to the time of filing said motion to dismiss, and relator to pay all other costs of both courts.

DREW, J., concurs.